See, also, 150 F.Supp. 827.

Maple APPLEWHAITE et al., Libellants,

v.

SAGUENAY TERMINALS, Ltd., et al., Respondents.

United States District Court
S. D. New York.

Jan. 10, 1956.

Rehearing Denied Feb. 15, 1956.

Shafter & Shafter, New York City, for libelants. Herbert J. Kaplow, New York City, of counsel.

Zock & Petrie, New York City, for respondent Saguenay Terminals, appearing specially herein. Edwin K. Reid, New York City, of counsel.

WALSH, District Judge.

This is a motion by respondent Saguenay Terminals, Ltd., a Canadian corporation, to vacate service of process on the ground that it is not doing business in this district. The motion is denied.

Libellants are British subjects residing in Barbados, B.W.I. They represent deceased seamen injured in a collision between two vessels near Trinidad, one of the vessels allegedly having been owned and operated by Saguenay. Neither the deceased seamen nor the vessels involved

in the collision had any significant contacts with New York.

The question is whether activities carried out by J. F. Whitney & Co., a New York partnership, are sufficient to constitute the doing of business in New York by Saguenay. It is my conclusion that they are.

Saguenay owns 12 vessels and charters about 60 more. Its principal office is in Montreal. It operates a regular service between Eastern Canadian ports and Europe, the West Indies, South America and the Pacific coast of the United States and Canada. It has no regularly scheduled sailings from the port of New York but its vessels do call here several times a year, always using piers on the New Jersey side of the harbor.

J. F. Whitney & Co., pursuant to a written agreement executed April 27, 1951, acts as cargo solicitor for Saguenay in the New York area. It receives a 2½% commission on all cargo booked from this area as a result of its solicitation. It is the sole solicitor employed by Saguenay in this area and it has agreed not to act as agent for competing lines. One of its employees devotes full time to the business of Saguenay. It does not make any commitments for Saguenay; neither does it forward the cargo to the Saguenay terminals in Eastern Canada. It merely informs Saguenay of its prospective business and the proposed terms and Saguenay completes the agreement and deals directly with the shipper from that point on. Whitney distributes to 3,000 prospective shippers near New York, printed cards showing the sailing dates of Saguenay vessels. It receives once or twice a week memoranda from Saguenay giving the current positions of its vessels for the purpose of supplying this information to shippers in the New York area.

Whitney also acts as husbanding agent of Saguenay's vessels in the port of New York even though they dock on the New Jersey side of the harbor. The terms of this agreement are outlined in a letter of May 27, 1954. It is continued on a ship by ship basis, Saguenay reserving the right to use different agents at any time. Under this agreement Whitney is responsible for entering and clearing the vessel through customs, arranging berths, bunkers, pilots, tugs, stores and minor repairs and the shifting of the ships. It also is required to keep Saguenay advised as to the arrival of the ship, her sailing prospects, movement, repairs, etc. Whitney is authorized to advance to the master of each vessel up to $1,000 without further authorization for stores or repairs. Whitney has acted pursuant to this agreement with respect to 8 vessels in 1954 and 19 in 1955. Several of these vessels were under charter arrangements with other companies but Whitney acted for Saguenay and was compensated by Saguenay for its action.

Pursuant to authorization by Saguenay, Whitney carries Saguenay's name on its door and in the building directory of its building. The New York Journal of Commerce advertisement for Saguenay refers to Whitney as its traffic representative. The vice-president and general manager of Saguenay visits Whitney six to ten times a year in connection with Saguenay's business. Whitney receives commissions on about 4% of Saguenay's total cargo bookings.

Whitney's efforts on behalf of Saguenay are steady, regular and continuous. They are sufficient to support a holding of doing business in New York. Allegue v. Gulf & South American S. S. Co., Inc., D.C.S.D.N.Y., 103 F.Supp. 34, 35; Satterfield v. Lehigh Valley Railroad Co., D.C.S.D.N.Y., 128 F.Supp. 669. If the solicitation is regular and systematic it is immaterial that the business which it produces may be small in quantity. McClendon v. Curtis Bay Towing Co., D.C.S.D.N.Y., 130 F.Supp. 455. Even though the cause of action sought to be tried arose outside of New York, Saguenay's activities within New York are not so few that it would be unfair to compel it to stand trial here. Allegue v. Gulf & South American S. S. Co., Inc., supra.; cf. Latimer v. S/A Industrias Reunidas F. Matarazzo, 2 Cir., 175 F.2d 184, 186, certiorari denied 338 U.S. 867, 70 S.Ct.

141, 94 L.Ed. 531; Kilpatrick v. Texas & P. Ry. Co., 2 Cir., 166 F.2d 788, 791; Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139. This disposition is, however, without prejudice to any subsequent application of respondent based upon forum non conveniens. See Allegue v. Gulf & South American S. S. Co., Inc., supra.

Motion denied. It is so ordered.

#### On Motion for Reargument

Motion for reargument denied.

Respondents are correct in their assertion that the printed cards distributed to prospective shippers regarding scheduled sailings were distributed by Saguenay rather than by Whitney as stated in my original opinion. This printed information was, however, brought up to date by information supplied to their prospects through Whitney. The facts as stated in my opinion are those material to the disposition of the motion. With the single exception mentioned, there is no basis for changing my statement of them.