**Matter of the Grand Jury Subpœna Duces Tecum dated February 15, 1957 and Addressed To SIEMENS & HALSKE A.G., BERLIN, GERMANY.**

United States District Court
S. D. New York.
June 27, 1957.

Alexander & Green, New York City, for Siemens & Halske A.G., appearing specially.

Richard B. O'Donnell, Harry G. Sklarsky, ·Herman Gelfand, and Ralph S. Goodman, Attorneys, Department of Justice, New York City, for the United States.

WALSH, District Judge.

Siemens & Halske A.G., a German corporation, moves to quash a subpoena addressed to it in connection with a grand jury investigation as to possible violations of the anti-trust laws through alleged cartel activities of persons in the radio and television industry. The subpoena was served upon the assistant treasurer of Siemens New York Incorporated, as subsidiary of Siemens & Halske A.G.

Siemens & Halske A.G. is a large German producer of electrical and electronic equipment. It is, in turn, a subsidiary of Siemens-Schuckertwerke A.G.

In 1954 the two German Siemens corporations established a jointly owned subsidiary, a Delaware corporation, upon which the subpoena in question was served. Siemens (N.Y.) acts as representative of the German organizations in this country. It assists in the negotiation of contracts, servicing contracts and advising potential customers. It also advises and assists Siemens with respect to patents and patent licenses and it furnishes general technical, economic and financial information from this country. To a minor extent it sells products of the Siemens enterprise and purchases a small amount of American products for Siemens in Germany. It devotes itself exclusively to the business of Siemens. For these services it receives a flat allowance of $17,500 per month, plus a 5% price differential with respect to sales made for Siemens or purchases made on Siemens' account.

Even if its corporate affiliation be disregarded, the New York company is clearly an agent of the German parent. The parent's activities through this agent are sufficient to sustain the service of process within this district. See Applewhaite v. Saguenay Terminals, Ltd., D.C., 150 F.Supp. 825, mandamus denied,

**898**

Allegue v. Gulf & South American S. S. Co., Inc., D.C.S.D.N.Y., 103 F.Supp. 34, 35; Nugey v. Paul-Lewis Laboratories, D.C., 132 F.Supp. 448; McClendon v. Curtis Bay Towing Co., D.C.S.D.N.Y., 130 F.Supp. 455.

In addition, however, the inter-corporate history shows that the New York organization is no more than an alter ego for the German parents. The two German affiliates hold its entire stock. The chairman of its board of directors is a director and member of the board of management of one German parent, and also its head of international operations. Its president, who is also a member of the board, is an engineer formerly employed by one of the German organizations who came to this country to take charge of the American corporation. Two other members of the five member board are also officers or members of the boards of the German parent corporations. The American corporation has no business except the services it performs for its German parents. Although its officers have appreciable freedom of day to day action, they obviously are dependent to a substantial extent upon instructions from the parent corporation with respect to the items upon which they are to work. They are further restricted by the amount of the fee paid by the German parent. Any expenditure which will raise their budget above that amount must be approved in advance by the parent abroad.

The business of S. & H. which is serviced through the American corporation is substantial and continuous. It includes contracts totaling over $11 million in two years. These contracts were all concluded directly by the German parent, but the American corporation aided in locating and securing the customers, in servicing them, by furnishing engineering advice and answering other inquiries.

Notwithstanding Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634; People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, and the dictum in Eastman Kodak Co. of New York v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684, it is my opinion that at least for the purpose of sustaining process in aid of an investigation into crime, particularly a violation of the anti-trust laws, it is the duty of this Court to pierce the corporate veil with respect to a wholly owned subsidiary, such as here presented. Matter of Electric & Musical Industries, Ltd., D.C., 155 F.Supp. 892. While not over-ruling these cases, United States v. Scophony Corp., 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091, narrowly restricted them to other cases presenting identical facts and to controversies of a private nature which are not within Congressional policy manifested by the liberalization of the venue provision of Section 12 of the Clayton Act (15 U.S.C.A. § 22). See 333 U.S. at pages 816–818, 68 S.Ct. at pages 865–866.

The motion is denied. It is so ordered.