**SUPERIOR COAL CO. et al.**

**v.**

**RUHRKOHLE, A.G., et al.**

**Civ. A. No. 78–51.**

United States District Court,
E. D. Pennsylvania.

Aug. 14, 1979.

**416**

Abe H. Frumkin, Pottsville, Pa., Joseph G. Manta, Edward C. German and P. A. Ryan, Philadelphia, Pa., for plaintiffs.

H. Francis DeLone, R. C. Rizzo, Philadelphia, Pa., for Ruhrkohle A.G., Ruhrkohle Handel; Ruhr-American Coal Corp.; Ruhrkohle Trading Corp.

Arthur H. Kahn and Donald B. Lewis, Philadelphia, Pa., for Hansen Neuerburg Export-Import; Mannesmann, A.G., Mannesmann-Handel, A.G., Mannesman Pipe and Steel Corp.

William T. Coleman, Jr., Washington, D.C., for Franz Haniel & Cie, GmBH.

Patrick Ryan, Philadelphia, Pa., for Hugo Stinnes, A.G.

Henry T. Reath, Philadelphia, Pa., for Phillip Brothers Export Corp.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Twenty-one anthracite coal and coke producers in Schuylkill, Luzerne and Dauphin Counties, Pennsylvania, instituted this action under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and Section 801 of the Antidumping Act of 1916, 15 U.S.C. § 72, for numerous antitrust and antidumping violations.[1] Defendants include seven West German and four American corporations which influence the coal and coke industries in varied ways. Ruhrkohle, A.G., a West German corporation, mines, produces, processes and sells coal, coke and by-products for both domestic use and export. Ruhrkohle Handel GmBH, a West German corporation and wholly-owned subsidiary of Ruhrkohle, A.G., is a trading house for coal, coke, oil, petroleum products and building materials. A Delaware corpo-

ration with its principal place of business in New York, Ruhr-American Coal Corporation is a holding company owned jointly by Ruhrkohle, A.G., and Stinnes, A.G. Ruhr-American owns coal mines in West Virginia and Kentucky and produces, processes and sells coal there. Ruhrkohle Trading Corporation, a subsidiary of Ruhrkohle Handel GmbH, is also a Delaware corporation with its principal place of business in New York. Ruhrkohle Trading, however, imports coal, coke and chemical products for sale in the United States. Mannesmann, A.G., a West German corporation with 175 worldwide subsidiaries, is primarily a holding company but also manufactures steel, pipe and related steel products. Mannesmann-Handel, A.G., a West German corporation and wholly-owned subsidiary of Mannesmann, A.G., sells but does not manufacture steel products. Mannesmann Pipe and Steel Corporation, incorporated and having its principal place of business in New York, is a wholly-owned subsidiary of Mannesmann-Handel, and imports and exports coal, coke, pipe and steel for sale in the United States and abroad. Hansen-Neuerberg, Export-Import GmbH, another subsidiary of Mannesmann, A.G., is a West German corporation which sells only coke and coal for domestic use and export. Franz Haniel & Cie, GmbH, and Stinnes, A.G., are West German corporations which sell coal and coke in West Germany and abroad. Haniel also distributes oil, pharmaceuticals and agricultural and building products in Europe. Phillips Brothers Export Corporation, incorporated in Delaware, has its principal place of business in New York and imports coal and coke for sale in the United States.

Generally, plaintiffs allege that for at least five years antedating filing of the

---

1. Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, Section 7 of the Clayton Act, 15 U.S.C. § 18; Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act of 1936, 15 U.S.C. § 13(a); Section 73 of the Wilson Tariff Act, 15 U.S.C. § 8 and the Antidumping Act of 1916, 15 U.S.C. § 72. Unlike the other allegations, which are directed against all defendants, the Section 7 Clayton Act allegation is directed against defendants Ruhrkohle, A.G., Stinnes, A.G., and Ruhr-

American Coal Corporation only. This charge arises out of the purchase of Appalachian Resources Company, a domestic coal producer, by Ruhrkohle, A.G., and Stinnes, A.G., which transferred the acquired assets to the wholly-owned subsidiary, Ruhr-American Coal Corporation. Supposedly this transaction further depressed diminishing profits and increased current losses. Plaintiffs seek an order requiring these companies to divest themselves of the assets of Appalachian Resources Company.

complaint defendants and other unnamed co-conspirators have engaged in numerous unlawful business practices: a combination and conspiracy restraining United States foreign and interstate commerce in anthracite coal and commercial coke products, a conspiracy to monopolize this trade, and deceptive and covert alliances and joint ventures to accomplish these purposes. Specifically, plaintiffs charge defendants with making less than fair value sales of coke in the United States and fixing higher prices for coal and coke products which they sell in West Germany while fixing artificially low prices for coal and coke products which they export to the United States. Allegedly, defendants allocate customers among themselves, agree to prices, rebates, discounts, allowances and other terms and conditions of sale for coke and coal products. Plaintiffs contend that, in effect, defendants' actions eliminate competition among defendants and their co-conspirators in American, West German and foreign markets. Unaffiliated American commercial coke producers, plaintiffs argue, suffer losses and reduced profit levels to the point where they must abandon business, enter bankruptcy or submit to acquisition by defendants at distress prices. Plaintiffs demand damages exceeding $250,000,000, to be trebled under the antitrust laws, and injunctive relief prohibiting any further illegal action by defendants.

Defendants' responses to the complaint varied. Hansen-Neuerberg, Mannesmann Pipe and Steel, and Phillips Brothers filed answers. The other eight defendants moved to dismiss the complaint for lack of *in personam* jurisdiction, improper venue and insufficient service of process. Subsequently, the court limited discovery to jurisdictional issues. Plaintiffs submitted interrogatories and requests for production of documents to defendants, which filed answers and objections to all or part of these discovery requests on the grounds that they impermissibly overburdened defendants and exceeded the scope of discovery contemplated by the order of the court.

To compel broader responses to the discovery requests, plaintiffs filed an appropriate motion which focused on five issues: whether plaintiffs are entitled to discover defendants' contacts with the entire state and/or nation, whether plaintiffs are entitled to discover defendants' contacts unrelated to the instant causes of action, whether plaintiffs are entitled to discover contacts of defendants' related corporations, whether plaintiffs are entitled to discover defendants' contacts for a period of eight years preceding filing of the complaint, and whether plaintiffs' need for requested documents outweighs the incubus imposed on defendants in producing them.

After consideration of plaintiffs' motion and defendants' responses thereto, the reviewing magistrate ordered defendants to answer the discovery requests based on defendants' and all "related companies" nationwide contacts, whether or not related to the underlying causes of action, for the four-year statute of limitations period.[2] All but one defendant which initially filed motions to dismiss now appeal the magistrate's ruling.

■ To exercise jurisdiction consonant with due process over a non-resident defendant,[3] a federal district court must find that "certain minimum contacts" exist between the non-resident defendant and the forum "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

---

2. The magistrate noted that it was beyond his authority "at this stage of the litigation to attempt to resolve the split in the case law regarding nationwide contacts" and that he had "no choice but to order the defendants to comply with interrogatories and requests for documents aimed at flushing out contacts not only with the Eastern District, but with the State of Pennsylvania and with the United States as a whole".

3. Of course, aliens are entitled to due process. *Galvan v. Press,* 347 U.S. 522, 530, 74 S.Ct. 737, 98 L.Ed. 911 (1954), although some courts derive it from the Fifth, not the Fourteenth, Amendment. *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1143 (7th Cir. 1975).

Determining whether a defendant's contacts are quantitatively and qualitatively sufficient to meet the demands of due process is not a simple or mechanical computation. Rather, the court must find that there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws". *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In personam jurisdiction, therefore, requires consideration of the relationship among the defendant's contacts, the litigation and the forum.[4] A single contact may suffice to invoke jurisdiction; conversely, several contacts, depending on their nature and quality, may not. *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Hanson v. Denckla, supra* ; *McGee v. International Life Insurance Co.,* 355 U.S. 200, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *International Shoe Co. v. Washington, supra.*[5]

Plaintiffs urge that defendants' contacts with the entire nation, not just the forum state, comprise part of this determinative relationship. Relying primarily upon a handful of district court opinions, plaintiffs advance a "national contacts" theory predicated on the notion that the United States is deemed to have personal jurisdiction over any defendant present within its territorial borders. Where the cause of action arises under federal law, the argument runs, the Fourteenth Amendment due process strictures do not apply. Instead, the fairness standard of the Fifth Amendment due process clause controls, and defendants' contacts through the United States may be aggregated to satisfy this requirement. The gravamen of this theory is that "it is not the territory in which a court sits that determines the extent of its jurisdiction, but rather the geographical limits of the unit of government of which the court is a part". *Cryomedics, Inc. v. Spembly, Ltd.,* 397 F.Supp. 287, 291 (D.Conn.1975). *See also Edward J. Moriarty & Co. v. General Tire & Rubber Co.,* 289 F.Supp. 381, 390 (S.D.Ohio 1967). Underlying policy considerations supposedly dictate a like result. Foreign-based corporations experience relatively no more inconvenience in travelling to one state than another. Too, a foreign-based corporation may have substantial contacts diffused throughout the nation to the extent that in no one state do these contacts accumulate sufficiently to allow any state to assume jurisdiction. Under these circumstances an alien defendant could commit serious torts or wantonly breach contracts with impunity. *Engineered Sports Products v. Brunswick Corp.,* 362 F.Supp. 722, 728 (D.Utah 1973); *Centronics Data Computer Corp. v. Mannesmann, A.G.,* 432 F.Supp. 659, 664 (D.N.H. 1977).

Nowhere, however, do any of the courts accepting this novel proposition point to a federal statute authorizing district courts to take nationwide contacts into consideration and thereon to assume jurisdiction over alien corporations. In fact, many courts which endorse the theory admit that no such statute presently exists. For example, in *Edward J. Moriarty & Co. v. General Tire & Rubber Co., supra* at 390, the court stated that taking defendants' nationwide contacts into account

> has not been left open to us by the federal rules or statutes. That is, neither Congress nor the Supreme Court has provided statute or rule whereby substituted service may be made upon an alien corporation having certain minimal contacts with the United States.

---

4. For this reason courts sometimes also consider the interest of the state in protecting its citizens, the availability of another forum to litigate the claims, and convenience to the parties. In any event, under the Fifth Amendment the test is one of general fairness. *See Centronics Data Computer Corp. v. Mannesmann, A.G.,* 432 F.Supp. 659 (D.N.H.1977).

5. Granted, *International Shoe* and its progeny discuss *in personam* jurisdiction of state courts. However, the standards set forth in these decisions apply to the jurisdiction of federal courts as well. *Fraley v. Chesapeake & Ohio Railway Co.,* 397 F.2d 1, 3 (3d Cir. 1968); *Goldberg v. Mutual Readers League, Inc.,* 195 F.Supp. 778, 782–83 (E.D.Pa.1961).

And in *Centronics Data Computer Corp. v. Mannesmann, A.G., supra* at 664, the court admitted that the nationwide theory "has not yet been generally accepted and there is no specific statutory authority for it". In fact, the *Moriarty* court confessed that "whenever the 'federal' test of jurisdiction is applied, the Court invariably winds up looking at the contacts of the foreign corporation *with the state,* rather than the United States." *Edward J. Moriarty & Co. v. General Tire & Rubber Co., supra* at 390 n. 2 (emphasis added). *See also Graham Engineering Corp. v. Kemp Products Ltd.,* 418 F.Supp. 915, 919 n. 3 (N.D.Ohio 1976).

Furthermore, many courts which sympathize with plaintiffs' national contacts theory actually base their holdings on other grounds. In *Centronics Data Computer Corp. v. Mannesmann, A.G., supra,* the court rested its finding of *in personam* jurisdiction upon a tort theory of jurisdiction arising out of the New Hampshire long arm statute. In *Engineering Sports Products v. Brunswick Corp., supra,* a patent suit, the court relied on state contacts of the alien defendant in exercising personal jurisdiction. See also *Edward J. Moriarty & Co. v. General Tire & Rubber Co., supra* (jurisdiction based on alien defendant's "transacting business" within meaning of Ohio statute); *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137 (7th Cir. 1975) and *Scott v. Middle East Airlines Co., S.A.,* 240 Supp. 1 (S.D.N.Y.1965) (jurisdiction based on alien defendant's contacts with the state).

Clearly, the overwhelming consensus among federal courts is to analyze questions of *in personam* jurisdiction over alien defendants by examining the relationship of the defendant, the litigation and the forum under traditional *International Shoe* principles. *Grevas v. M/V Olympic Pegasus,* 557 F.2d 65 (4th Cir.), *cert. denied,* 434 U.S. 969, 98 S.Ct. 515, 54 L.Ed.2d 456 (1977); *Koupetoris v. Konkar Intrepid Corp.,* 535 F.2d 1392 (2d Cir. 1976); *Fisons, Ltd. v. United States,* 458 F.2d 1241 (7th Cir.) *cert. denied,* 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed.2d 581 (1972); *Bernardi Brothers, Inc. v. Pride Manufacturing, Inc.,* 427 F.2d 297 (3d Cir. 1970); *Volkswagen Interamericana, S.A. v. Rohlsen,* 360 F.2d 437 (1st Cir.), *cert. denied,* 385 U.S. 919, 87 S.Ct. 230, 17 L.Ed.2d 143 (1978); *I. S. Joseph Co. v. Mannesmann Pipe & Steel Corp.,* 408 F.Supp. 1023 (D.Minn.1976); *Eastman Kodak Co. v. Studiengesellschaft Kohle mbH,* 392 F.Supp. 1152 (D.Del.1975); *Crucible, Inc. v. Stora Kopparbergs Bergslags AB,* 403 F.Supp. 9 (W.D.Pa.1975); *Hitt v. Nissan Motor Co.,* 399 F.Supp. 838 (S.D.Fla.1975); *Vergara v. Aeroflot "Soviet Airlines",* 390 F.Supp. 1266 (D.Neb.1975); *Gerber Scientific Instrument Co. v. Barr and Stroudt, Ltd.,* 383 F.Supp. 1238 (D.Conn.1973); *SCM Corp. v. Brother International Corp.,* 316 F.Supp. 1328 (S.D.N.Y.1970); *Kohn v. American Metal Climax Inc.,* 313 F.Supp. 1251 (S.D.N.Y.1970); *Kohn v. American Metal Climax, Inc.,* 313 F.Supp. 1251 (S.D.N.Y.1966); *Japan Gas Lighter Association v. Ronson Corp.,* 257 F.Supp. 219 (D.N.J.1966); *Ferraioli v. Cantor,* 259 F.Supp. 842 (S.D.N.Y.1966). This holds true in diversity actions as well. *Intermeat Inc. v. American Poultry, Inc.,* 575 F.2d 1017 (2d Cir. 1978); *Aaron Ferrer & Sons v. American Compressed Steel Co.,* 558 F.2d 450 (8th Cir. 1977); *Amba Marketing Systems, Inc. v. Jobar International, Inc.,* 551 F.2d 784 (9th Cir. 1977); *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280 (9th Cir. 1977); *Scieszka v. Grumman American Aviation Corp.,* No. 78–3203 (E.D.Pa. July 10, 1979); *Gagner v. Parsons & Whittemore, Inc.,* 450 F.Supp. 1093 (E.D.Pa.1978); *Engineering Sales Co. v. Techni-Cast Corp.,* 444 F.Supp. 508 (E.D.Wisc. 1978); *Thermo Thrift Industries, Inc. v. Mono-Therm Insulation Systems, Inc.,* 450 F.Supp. 398 (W.D.Ky.1978); *Kurtz v. Draur,* 434 F.Supp. 958 (E.D.Pa.1977); *B. J. McAdams, Inc. v. Boggs,* 426 F.Supp. 1091 (E.D.Pa.1977); *Steelman v. Strickland,* 78 F.R.D. 187 (E.D.Tenn.1977); *Miller v. American Telephone & Telegraph,* 394 F.Supp. 58 (E.D.Pa.1975).

To conclude, the position of the Ninth Circuit on this issue is both instructive and compelling. Reviewing the district court's conclusion that it lacked personal jurisdiction over defendant, the appellate court opined that

(i)f policy considerations do indeed dictate that an alien defendant's contacts with the entire United States should be aggregated, and if the Constitution does not forbid such a practice—at least where the plaintiff is suing in federal court on a federal cause of action, *the Federal Rules should be amended to authorize such a practice. Such a step is, however, not ours to take.* (emphasis added).

*Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 418 (9th Cir. 1977).

Accordingly, that part of the magistrate's order which permitted discovery of defendants' *nationwide* contacts is reversed. Defendants will be ordered to answer the discovery requests with respect to defendants' contacts within the Commonwealth of Pennsylvania only.

## II.

■ Defendants also appeal the magistrate's ruling that defendants' contacts unrelated to the instant cause of action were discoverable as "potentially relevant to the question of jurisdiction".

In *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1951), the Supreme Court held that the minimum contacts mandated as an essential prerequisite to *in personam* jurisdiction by *International Shoe* may be unrelated to the cause of action if the defendant carries on "continuous and systematic corporate activ-

ities". *Id.* at 445, 72 S.Ct. 413. *See also International Shoe v. Washington, supra* at 318–19, 66 S.Ct. 154. The court concluded that the due process clause does not prohibit a state court from exercising jurisdiction based on unrelated contacts over non-resident defendant.[6] *Perkins v. Benguet Consolidated Mining co., supra* at 446, 72 S.Ct. 413. *See also Volkswagen Interamericana, S.A. v. Rohlsen, supra* at 440–41, 72 S.Ct. 413.

Of course, "doing business" is a valid basis for jurisdiction only if a statute authorizes this court to exercise jurisdiction. In this instance, Pennsylvania has a "long arm" statute [7] expressly designed to cover a non-resident defendant's activities within the Commonwealth to the maximum extent constitutionally permissible.[8] Construing the Pennsylvania long arm, this court exercised personal jurisdiction over a non-resident defendant in a cause of action unrelated to its activities in Pennsylvania upon finding that defendant "did business" within the meaning of the Pennsylvania statute. *Damon Coats, Inc. v. Munsingwear, Inc.,* 431 F.Supp. 1303 (E.D.Pa.1977). There defendant employed only a few salesmen, who could not contractually bind the corporation. However, the defendant did ship products into Pennsylvania for sale in local stores; these contacts sufficed to constitute "doing business". *Id.* at 1308.

**6.** In light of *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), jurisdiction based entirely on one contact, unrelated and unaccompanied by any other ties by which a non-resident defendant purposefully avails himself of the protections and benefits of the forum's laws, may be constitutionally infirm. The Shaffer plaintiff brought a shareholder's derivative action against two corporate defendants, incorporated in Delaware with the principal place of business in Arizona, and numerous corporate officers and directors. Pursuant to Delaware law he filed a motion to sequester defendants' stock, options, debentures, and warrants, which another Delaware statute deemed to be present in the state and thus subject to seizure. The Delaware courts held that the statutory situs of the stock provided a sufficient basis upon which to exercise *in rem* jurisdiction. On appeal, the Supreme Court reversed and held that all exercises of jurisdiction, irrespective of the *in personam* or *in rem*

labels, are to be tested by the same (*International Shoe*) standard. The court further held that the statutory presence of the property alone would not support the state court's exercise of jurisdiction on a cause of action unrelated to the seized property. *Id.* at 209, 97 S.Ct. 2569.

The court noted, however, that "(t)he presence of property (unrelated to the cause of action) in a State may bear on the existence of jurisdiction by providing contacts among the forum State, the defendant, and the litigation." *Id.* at 207, 97 S.Ct. at 2582.

**7.** 42 Pa.C.S.A. § 8301 *et seq.,* replaced by 42 Pa.C.S.A. § 5301 *et seq.,* which became effective June 27, 1978. We reserve decision on which version applies to this case.

**8.** 42 Pa.C.S.A. § 5322(b).

In the case at bar, plaintiffs are entitled to discover defendants' contacts unrelated to the underlying cause of action in order to determine if defendants are indeed "doing business" in Pennsylvania and thus subject to the jurisdiction of this court.[9] Accordingly, that part of the magistrate's order directing defendants to answer discovery requests concerned with defendants' contacts unrelated to the instant causes of action will be affirmed.

## III

Plaintiffs also sought to discover contacts of all defendants' related companies. Defendants Mannesmann, A.G., and Mannesmann Handel, A.G., specifically objected to supplying information concerning companies in which they owned less than a majority of the stock. The magistrate ordered defendants to provide the requested information with respect to "each of their related companies".[10]

A corporation may in fact transact business in a district through related corporations. To determine whether the affiliation is sufficiently substantial to subject the principal corporation to the exercise of the court's jurisdiction through the operations of the related corporation requires unremitting scrutiny into the relationship between the two entities. *United States v. Scophony Corporation of America,* 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948); *Flank Oil Co. v. Continental Oil Co.,* 277 F.Supp. 357 (D.Colo.1967). The substance, not form, of the inter-corporate nexus will be dispositive. *K. J. Schwartzbaum v. Evans, Inc.,* 44 F.R.D. 589 (S.D.N.Y.1968); *Flank Oil Co. v. Continental Oil Co., supra; Crucible, Inc. v. Stora Kopparbergs Bergslags AB, supra; Honeywell, Inc. v. Metz Apparatewerke, supra.* Naturally, ownership of all or most of the stock in the related corporation is one of the most common methods by which one corporation controls another. *Flank Oil Co. v. Continental Oil Co., supra.* But ownership of less than half of the stock is no talisman; control sufficient for jurisdictional purposes may be present even where there is *no* stock ownership. *United States v. Watchmakers of Switzerland Information Center,* 133 F.Supp. 40 (S.D.N.Y.1955). The pertinent inquiry considers whether the corporations have common officers and directors, *Tokyo Boeki (U.S.A.), Inc. v. S. S. Navarino,* 324 F.Supp. 361 (S.D.N.Y.1971); a common marketing image, *Audio Warehouse Sales, Inc. v. U. S. Pioneer Electronics Corp.,* 1975 Trade Cases ¶ 60,213 (D.D.C. 1975), *SCM Corp. v. Brother International Corp.,* 316 F.Supp. 1328 (S.D.N.Y.1970); common use of a trademark or logo, *Call Carl, Inc. v. BP Oil Corp.,* 391 F.Supp. 367 (D.Md.1975); common use of employees, *Audio Warehouse Sales, Inc. v. U. S. Pioneer Electronics Corp., supra;* interchange of managerial and supervisory personnel, *Tokyo Boeki (U.S.A.), Inc. v. S. S. Navarino, supra;* or an integrated sales system, *Sunrise Toyota Ltd. v. Toyota Motor Co.,* 55 F.R.D. 519 (N.D.N.Y.1972).

A court may also examine whether the related corporation performs business duties and functions which the principal corporation would normally transact through its own agents or departments, *Waldron v. British Petroleum Co., Ltd.,* 148 F.Supp. 830 (S.D.N.Y.1957); whether the related corporation acts as a marketing arm of the principal corporation, *Call Carl, Inc. v. BP Oil Corp., supra,* or operates as an exclusive distributor, *SCM Corp. v. Brother International Corp., supra, United States v. Watchmakers of Switzerland Information Center, supra,* and whether the officers of the related corporation receive instructions from the principal corporation, *Matter of Grand Jury Subpoena Addressed to Sie-*

---

9. Ascertaining contacts unrelated to the instant cause of action may also affect whether exercise of jurisdiction comports with due process. See note 6.

10. The magistrate accepted plaintiffs' definition of "related companies": "subsidiaries, divisions, affiliates, and other organizational or operating units, including, but not limited to cartels, Konzern(e), or related business units (Verbundene Unternehmen)". Interrogatories of Plaintiffs Directed to Defendants, Set Number One, ¶ A. For present purposes we adopt the same definition.

*mens & Halske, A.G.,* 155 F.Supp. 897 (S.D. N.Y.1957). The analysis requires a determination that the principal corporation does or does not sufficiently influence the related corporation's decisions which are most likely to lead to violations of the antitrust laws. See generally *Zenith Radio Corp. v. Matsushita Electric Industrial Co.,* 402 F.Supp. 262, especially at 327–28 (E.D.Pa.1975).[11]

■ To enable plaintiffs to ascertain the exact, total relationships among defendants and their related companies by this method requires that defendants provide the requested information concerning all of their related companies. Therefore, this part of the magistrate's order is also affirmed.

### IV

■ Plaintiffs also demanded discovery of defendants' contacts for a period beginning January 1, 1970. Defendants contended that the appropriate time span was the four-year statute of limitations period. The magistrate agreed with defendants.

In a private antitrust suit plaintiff bears the burden of establishing both the jurisdiction of the court over the non-resident corporate defendants and the relationship of the defendants and the forum at the time the complaint was filed. *K. J. Schwartzbaum, Inc. v. Evans, Inc., supra. See also Sunbury Wire & Rope Manufacturing Co. v. United States Steel Corp.,* 230 F.2d 511 (3d Cir. 1956); *City of Philadelphia v. Morton Salt Co.,* 248 F.Supp. 506 (E.D.Pa.1965), aff'd., 385 F.2d 122 (3d Cir. 1967); *Stern Fish Co. v. Century Seafoods, Inc.,* 254 F.Supp. 151 (E.D.Pa.1966). At this stage of the proceedings relating to discovery, but restricted to the question of jurisdiction, plaintiffs are not entitled to discover activities pre-dating the statute of limitations. Such discovery relating to the existence of pre-complaint conspiracies, if permissible,

must wait until the proceedings reach the merits stage.

This part of the magistrate's order is also affirmed.

### V

■ The final contention raised by defendants on appeal is that the burden of producing documents requested by plaintiffs outweighs plaintiffs' needs. Through discovery requests plaintiffs asked for defendants' and related corporations' organization charts, accounting procedures, board of directors meetings' minutes, business agreements with anyone having business facilities in Pennsylvania, advertising and trademark information, banking transactions and names of officers and directors. Defendants vociferously decry the magnitude of the effort required to comply, the distance between defendants' corporate headquarters in West Germany and this district, and the inevitable difficulties in interpreting massive documents from the German to the English language. After careful consideration of plaintiffs' requests, the magistrate denied four as "overbroad", "vague", or "relating to the merits" and ordered defendants to respond to all others, allowing them, in many instances, to supply "just the most recent document or documents that satisfy the substance of this request in full".

As several defendants candidly admit, on this score, the discovery dispute, distilled from the hyperbole and invective, simply requires balancing plaintiffs' needs against defendants' burden. *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 207 F.Supp. 407 (M.D.Pa.1962); *Harvey v. Eimco Corp.,* 28 F.R.D. 381 (E.D.Pa.1961); *Hopkinson Theatre, Inc. v. RKO Radio Pictures, Inc.,* 18 F.R.D. 379 (S.D.N.Y.1956). The magistrate has measured these factors and drawn a conclusion largely in favor of plaintiffs.[12]

---

11. Many of these cases arose in the context of whether a parent corporation "transacted business" through a subsidiary within the meaning of § 12 of the Clayton Act for venue purposes. By analogy, we find these arguments persuasive.

12. The magistrate was well aware of the importance of discovery on the jurisdictional issue. As he observed, it "is the very heart of the controversy, for on it turns the plaintiffs' right to be in court."

His decision is supported by law.[13] Accordingly, this part of his order is also affirmed.

---

13. See, for example, *Zenith Radio Corp. v. Matsushita Electric Industrial Co.,* 402 F.Supp. 262 (E.D.Pa.1975) (organizational charts and names of officers and directors); and *Tiger Trash v. Browning Ferris Industries, Inc.,* 1977–2 Trade Cases ¶ 61,505 (7th Cir. 1977) (accounting procedures).