OMNI EXPLORATION, INC.

v.

GRAHAM ENGINEERING CORPORATION, a/k/a Graham Production Company, Inc. and Blocker Drilling Company, Inc.

Civ. A. No. 82–5002.

United States District Court,
E.D. Pennsylvania.

April 27, 1983.

Francis P. Devine, III, Thomas J. Rueter, Philadelphia, Pa., for plaintiff.

Frank A. Luchak, Philadelphia, Pa., for Blocker Drilling.

Peter F. Marvin, Philadelphia, Pa., for Graham Engineering.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

This is an action for breach of contract. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332(a)(1).  Each defend-

ant in the action has filed motions asking this court to dismiss the case for lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2) or, in the alternative, to transfer the case to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a). For the reasons hereinafter set forth we deny the motions to dismiss as to both defendants, grant Blocker's motion to transfer, and deny Graham's motion to transfer.

Plaintiff, Omni Exploration, Inc. (Omni) is a Delaware corporation, with its principal place of business in the Eastern District of Pennsylvania. Omni is engaged in the business of oil and gas exploration, development and production. Defendant, Graham Engineering Corporation (Graham), is a Texas corporation engaged in the business of operating, conducting and supervising the drilling of wells for the exploration and development of oil and gas. Defendant, Blocker Drilling Company, Inc. (Blocker), also a Texas corporation, is engaged in the business of drilling wells for the exploration and development of oil and gas. In December 1980 Omni hired Graham to drill an oil well known as Kingsville Dome A–1 located in Kleberg County, Texas. Subsequently, Graham, with the knowledge and consent of Omni, entered into a drilling contract with Blocker who agreed to conduct and operate the drilling of the well. Shortly after the drilling commenced problems arose causing delays and additional expense. Omni filed this suit alleging the delays and expense were due to the negligence of the defendants.

Initially we must determine whether this court has personal jurisdiction over the nonresident defendants. Rule 4(e) of the Federal Rules of Civil Procedure permits a district court to assert personal jurisdiction over a non-resident to the extent allowed under the law of the state in which the court sits. The plaintiff asserts that this court has jurisdiction over both defendants under Pennsylvania's long arm statute, 42 Pa.C.S.A. § 5321, *et seq.* The applicability of the statute as it pertains to each defendant will be discussed separately below.

### Jurisdiction Over Graham

With respect to jurisdiction over defendant Graham the plaintiff relies on 42 Pa.C.S.A. § 5322, which reads in pertinent part:

(a) General rule—A tribunal of this Commonwealth may exercise personal jurisdiction over a person . . . who acts directly or by an agent, as to a cause of action or other matter arising from such person:

(1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for purpose of this paragraph.

. . . . .

(ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

. . . . .

(b) Exercise of full constitutional power over nonresidents—In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

This statute as interpreted by the Pennsylvania courts makes the exercise of jurisdiction over a nonresident co-extensive with the permissible limits of due process. *Koenig v. International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers,* 284 Pa.Super. 558, 426 A.2d 635, 639, 640 (1980); *Hart v. McCollum,* 249 Pa.Super. 267, 376 A.2d 644, 647 (1977).

In determining whether due process will allow us to hold Graham subject to suit we must undertake a two part analysis. The initial determination to be made is

whether the cause of action arises from the defendant's forum related activities or non-forum related activities. *Reliance Steel Products Co. v. Watson, Ess, Marshall and Enggas,* 675 F.2d 587, 588 (3d Cir.1982); *Schwilm v. Holbrook,* 661 F.2d 12 (3d Cir. 1981).

If the claim is forum related the plaintiff need show only "minimum contacts" by the defendant with the forum. Pennsylvania case law evaluates minimum contacts under the three-part test formulated in *Proctor and Schwartz, Inc. v. Cleveland Lumber Co.,* 228 Pa.Super. 12, 19, 323 A.2d 11, 15 (1974). *See also, Schmidt v. Leader Dogs for the Blind, Inc.,* 544 F.Supp. 42, 45 (E.D. Pa.1982); *The Union National Bank of Pittsburgh v. L.D. Pankey Institute,* 284 Pa.Super. 537, 426 A.2d 624 (1980); *Goff v. Ambrecht Motor Truck Sales, Inc.,* 284 Pa. Super. 544, 426 A.2d 628 (1980).

If the claim arises from non-forum related activity, the court must determine whether the defendant's activities within the forum were sufficiently "continuous and substantial" to justify an assertion of in personam jurisdiction. *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Reliance Steel, supra; Compagnie des Bauxites de Guinea v. Insurance Company of North America,* 651 F.2d 877 (3d Cir.1981); *Bork v. Mills,* 458 Pa. 228, 329 A.2d 247 (1974).

■ In all cases where personal jurisdiction is challenged the burden rests with the plaintiff to come forward with facts, by affidavit or otherwise, in support of personal jurisdiction. *Compagnie des Bauxites, supra; Cohen v. Rosengarten,* 88 F.R.D. 568, 571 (E.D.Pa.1980); *DiCesare-Engler Productions, Inc. v. Mainman, Ltd.,* 81 F.R.D. 703, 705 (W.D.Pa.1979). We find that in the case of defendant Graham the plaintiff has met that burden.

· Omni asserts that the cause of action in the case *sub judice* arose from Graham's forum related activity. In support of its claim Omni cites *Proctor and Schwartz v. Cleveland Lumber, supra,* which held that a cause of action arose in Pennsylvania when

a Georgia corporation entered into contractual obligations with a Pennsylvania corporation and then breached those same obligations. Omni alleges that the case *sub judice* and *Proctor* are basically indistinguishable. We disagree.

The breach of contractual obligations in *Proctor* occurred within Pennsylvania. The contract in the case called for the Georgia corporation to purchase certain equipment from a Pennsylvania corporation on an installment basis. The breach occurred when the Georgia corporation stopped making payments to the Pennsylvania corporation. The actual breach occurred in Pennsylvania, as Pennsylvania was the place where payment was to be tendered.

■ In the case now before us all obligations of the defendant under the contract were to be performed outside this forum. The alleged negligent activity of Graham occurred in Texas, and it is this activity which gave rise to the alleged breach—and thus the cause of action. The entering into of a contract with a Pennsylvania corporation, and thereby purposefully availing oneself of the privilege of acting in Pennsylvania "will not support a cause of action which is unrelated to the defendant's activities in this state." *Proctor,* 323 A.2d at 15.

■ Because the cause of action arose from Graham's non-forum related activity we must determine whether Graham has maintained "continuous and substantial" forum affiliations. Omni alleges that the "continuous and substantial" standard has been met by activities of the defendant, which include: (1) prior drilling operations performed for Omni; (2) daily telephone calls made to the plaintiff's headquarters to report on the drilling of the well in question; and (3) the sending of correspondence to the plaintiff's headquarters, confirming the telephone calls.

After careful analysis we conclude that Graham's contacts are of sufficient quality to subject the defendant to the jurisdiction of this court. It is quite evident that Graham has had a number of contacts with the plaintiff and this forum in the past. On at

least ten prior occasions Omni has engaged Graham to perform drilling on its behalf. All during these operations Graham maintained contact with the plaintiff and thus with this forum. As a sophisticated business entity Graham could reasonably have anticipated that if it breached its contract, Omni would sue in Pennsylvania.

As for the phone calls and other correspondence they were so numerous, continuous and of a substantial quality that they clearly satisfy the "continuous and substantial" test. The calls and written correspondence were made on almost a daily basis during the entire course of the drilling operation. It is evident that the defendant was well aware that his dealings with Omni brought him into continuous contact with this forum. Therefore, the defendant must have realized that its "conduct and connection with the forum State (were) such that (it) should (have) reasonably anticipated being haled into court (here)." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■ Lastly, the plaintiff argues that the choice of law provision contained in the contract makes this a Pennsylvania contract which is to be interpreted under the laws of Pennsylvania. Although it is true that such a choice of law provision is not of itself sufficient to vest this court with jurisdiction, it is certainly a factor to be considered. *Baron and Company, Inc. v. Bank of New Jersey,* 497 F.Supp. 534, 538 (E.D.Pa.1980). Having entered into a contract with such a clause, it is not unreasonable to find that Graham could foresee that such a contract would be interpreted by a Pennsylvania court.

"The business of this Nation is rarely localized in this age of mass transportation and rapid communication." The interstate affairs of national corporations have "broken down and obliterated both the import of state boundaries and the basic rationale which has, heretofore, limited the power of the states to acquire jurisdiction over business entities that engage in commercial activities with citizens of that state." *Aquar-*

*ium Pharmaceuticals Inc. v. Industrial Pressing and Packaging, Inc.,* 358 F.Supp. 441, 445 (E.D.Pa.1973). In light of the foregoing and after careful evaluation of all the factors presented above we find that it would not offend "traditional notions of fair play and substantial justice" to require Graham to defend the suit in this forum.

### Jurisdiction Over Blocker

With respect to jurisdiction over defendant Blocker the plaintiff alleges that this court has personal jurisdiction pursuant to 42 Pa.C.S.A. § 5322(b) which provides for the exercise of jurisdiction "to the fullest extent allowed under the Constitution of the United States."

Normally at this point an analysis of whether the cause of action against Blocker arose from his forum or non-forum related activities would be appropriate. However, it is clear from the pleadings, affidavits and other evidence that jurisdiction is sought over Blocker based solely on its non-forum related activities. After careful analysis we find that Omni has not met its burden of showing that we have personal jurisdiction over Blocker.

Omni alleges that: (1) Blocker's extensive advertising in national trade journals; (2) the nationwide offering of stock by the parent company of Blocker; and (3) the work done in the past by Blocker for Omni, combine to constitute "continuous and substantial" forum affiliation.

In support of its allegation that Blocker's advertising creates a basis for our assertion of personal jurisdiction the plaintiff directs us to: *Busch v. Sea World of Ohio,* 95 F.R.D. 336 (W.D.Pa.1982); *Hart v. McCollum,* 249 Pa.Super. 267, 376 A.2d 644 (1977); and *Buckingham Productions, Inc. v. Alliance Diet,* C.A. No. 82–3782 (E.D.Pa., Dec. 28, 1982). We find none of these cases to be dispositive of the issue here.

*Busch* held that the Western District Court of Pennsylvania had jurisdiction over an Ohio corporation because the defendant's extensive, localized advertising in the Pittsburgh area had given rise to the plaintiff's

injuries. Namely, the advertising had led the plaintiff to take advantage of the defendant's amusement park in Ohio where she was subsequently injured. The court held that the advertisements "had a realistic impact in (the) forum and the defendant should have reasonably foreseen that the transaction would have consequences in Pennsylvania." *Busch, supra,* at 340.

Similarly in *Hart* the advertising of the defendant was seen as giving rise to the plaintiff's injuries. The Pennsylvania Superior Court held that a Pennsylvania court had jurisdiction over the foreign corporation which had extensively advertised in Pennsylvania in order to entice persons to their drinking establishment in New Jersey. The court went on to find that the advertising was a meaningful and substantial enough contact to make the exercise of jurisdiction over the foreign corporation reasonable.

Lastly, in *Buckingham* we held that a non-resident corporation was subject to this court's jurisdiction based on its advertising in a publication which was readily available and distributed throughout Pennsylvania. In *Buckingham* the advertising gave rise to the plaintiff's cause of action as the advertising itself was alleged to have injured the plaintiff's business.

■ The case *sub judice* is clearly distinguishable from these cases. Unlike *Busch* and *Hart* the plaintiff has not shown that Blocker's advertising gave rise to the injury suffered. Although it was clear that Omni was aware of Blocker's advertising it was Graham and not Omni who engaged Blocker to do the work. Also Omni had employed Blocker in the past and thus it cannot be said that the advertising offered as evidence led the plaintiff to go and seek Blocker's services.[1]

*Buckingham* is also distinguishable from the case *sub judice* as here the harm was not the advertising itself. Omni was allegedly injured by activities of Blocker not related to its advertising. It would be be-

yond the bounds of due process and notions of fair play and justice to find that we have personal jurisdiction over a company doing business on an international scale merely because advertisements of the company, in national trade journals, found their way into this forum. This is especially true where it is not apparent that such advertising caused or led to the relationship formed between Omni and Blocker.

■ In support of the allegation that the offering of stock by Blocker's parent company is a sufficient forum affiliation to give us jurisdiction over Blocker, the plaintiff cites the case of *Superior Coal Co. v. Ruhrkohle, A.G.,* 83 F.R.D. 414 (E.D.Pa.1979). In *Superior* the court held that a corporation may in fact transact business in a forum through a related corporation. However this is only true where the corporations have common officers and directors; a common marketing image; common use of a trade-mark or logo; common use of employees; an interchange of managerial and supervisor personnel; or an integrated sales system. *Superior, supra,* at 421. Thus where a subsidiary acts merely as a "shell" or "front" for the parent corporation a court may deem the actions of the subsidiary the actions of the parent. And where those actions meet the test of due process, in personam jurisdiction may be asserted over the parent.

■ Omni seeks to have the court interpret *Superior* in such a manner that the actions of the parent should be found to constitute the actions of the subsidiary. This would be absurd given that the test in *Superior* is one of "control". Although it is logical and reasonable for one to find that a parent corporation often "controls" the actions of its subsidiaries, it would be contrary to universally acknowledged corporate structure to find that a subsidiary controlled the parent. Absent any evidence to show that Blocker controlled its parent company we cannot find that the acts of

---

**1.** Omni had engaged Blocker's services in 1979 and all advertising offered in support of plain-
tiff's motion was distributed from 1981 to 1982.

the parent were the acts of Blocker. Even if we were to accept Omni's contention that the acts of Blocker and its parent corporation are one and the same there has been no evidence presented to show that such act of issuing stock is a sufficiently substantial and continuous forum affiliation to subject Blocker to this court's jurisdiction.

■ Lastly, Omni alleges that Blocker has done work for it in the past. According to the plaintiff this work consisted of one prior job done by Blocker for Omni in late 1979. A single isolated transaction, wherein all work was done outside of the forum does not meet the test of being a substantial and continuous forum affiliation.

Taking all the above-mentioned factors into consideration, the plaintiff has failed to meet its burden of showing the defendant's activities to be so continuous and substantial to justify our holding that we have personal jurisdiction over Blocker. The "continuous and substantial" standard requires that the facts necessary to assert jurisdiction must be extensive and persuasive. *Compagnie des Bauxites, supra* at 890 (Gibbons, J. dissenting). Such a showing has not been made in regard to defendant Blocker.

### Motion To Transfer

Relying on 28 U.S.C. § 1404(a) both defendants seek to have this action transferred to the Southern District of Texas. Section 1404(a) states that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The initial determination to be made here is whether transfer is sought to a district or division where the action could have been brought. In the case *sub judice* there is no question that the case could have been brought in the Southern District of Texas, as it is the place where all the defendants reside. 28 U.S.C. § 1391(a).

**2.** A district court may transfer under § 1404(a) even though the court lacks personal jurisdiction over the defendant. *U.S. v. Berkowitz,* 328 F.2d 358, 361 (3d Cir.), *cert. denied,* 379 U.S.

Having made the above determination we are left to decide if transfer should be ordered for the "convenience of parties and witnesses, in the interest of justice." In making this decision we are "vested with a large discretion." *Solomon v. Continental American Life Insurance Co.,* 472 F.2d 1043 (3d Cir.1973). This discretion is to be exercised in light of all the circumstances of the case. 1 *Moore's Fed. Practice,* § 0.145(5) (2d ed. 1982).

### Transfer Of Blocker

■ Having found that this court lacks personal jurisdiction over Blocker we are left with either transferring the case or dismissing it.[2] Transferring the case would certainly be more convenient for both Blocker and the witnesses it would call on its behalf as all reside in the Southern District of Texas. On the other hand, the plaintiff will obviously be inconvenienced by a transfer. However, a dismissal would cause the plaintiff even greater inconvenience. Thus in light of the above we believe the interests of justice will be better served by the transfer of the action as it pertains to Blocker.

### Transfer Of Graham

■ Having found that we have jurisdiction over Graham we must determine if transfer would be appropriate or not. In making such a determination there are six basic factors which should be examined: (1) the plaintiff's choice of forum; (2) the ease of access to sources of proof; (3) the costs involved in obtaining attendance of willing witnesses; (4) practical problems that make trial easy, expeditious and inexpensive; (5) difficulties of court administration, and (6) the desirability of state law being determined by a federal court located therein. *Kawecki Berylco Industries v. Fansteel, Inc.,* 512 F.Supp. 984, 986 (E.D.Pa.1981); *Bartolacci v. Church of the Presiding Bishop,* 476 F.Supp. 381 (E.D.Pa.1979).

821, 85 S.Ct. 42, 13 L.Ed.2d 32 (1964); *Reyno v. Piper Aircraft Co.,* 630 F.2d 149, 164, 165 (3d Cir.), 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (rev'd on other grounds).

**456**

The plaintiff in the case *sub judice* has chosen the Eastern District as his forum. Such a choice is given great deference although it is not necessarily controlling. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *Shutte v. Armco Steel Corp.,* 431 F.2d 22 (3d Cir.1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971); *Bartolacci, supra,* at 383. It is up to the defendant to show that the "trial would more conveniently proceed and the interests of justice would be better served in the (transferee) district." *Fitzgerald v. Central Gulf Steamship Corp.,* 292 F.Supp. 847, 848 (E.D. Pa.1968), quoting *Peyser v. General Motors Corp.,* 158 F.Supp. 526, 529 (S.D.N.Y.1958); *Bartolacci, supra* at 383.

As to the ease of access of sources of proof, the costs of obtaining witnesses, and practical problems of trial it has not been shown by the evidence offered that transfer to the Southern District of Texas would make a significant difference as to any of these factors. Basically in light of factors (2) through (4) the action being held in Pennsylvania is burdensome to the defendant while the holding of the suit in Texas would be equally burdensome to the plaintiff.

As to the difficulty of court administration no evidence was offered by either side on this factor. Thus this factor appears to have a negligible effect on both sides.

Given the desirability of having Pennsylvania law determined by a court sitting in Pennsylvania, the plaintiff's choice of forum, and the negligible effects of the other factors considered we find that in the interests of convenience and justice the action in respect to Graham should not be transferred at this time. If defendant Graham presents documentary evidence, after further discovery, to support a transfer, this court will reconsider the motion.