BALTIMORE BANK FOR COOPERA-TIVES, Appellant,

v.

FARMERS CHEESE COOPERATIVE

and

Commonwealth of Pennsylvania, Milk Marketing Board.

No. 79–1688.

United States Court of Appeals, Third Circuit.

Argued Oct. 16, 1979.

Decided Dec. 28, 1979.

---

Kenneth P. Simon, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellant.

H. Woodruff Turner, George M. Cheever, Kirkpatrick, Lockhart, Johnson & Hutchi-

son, Pittsburgh, Pa., for appellee Farmers Cheese Co-op.

Daniel T. Flaherty, Jr., Harrisburg, Pa., for appellee Com. of Pa. Milk Marketing Bd.

Before GIBBONS and HIGGINBOTHAM, Circuit Judges, and WEINER, District Judge.*

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Baltimore Bank for Cooperatives appeals from an order of the District Court for the Western District of Pennsylvania that sustained a jury verdict in favor of Farmers Cheese Cooperative. Baltimore Bank contends that the district court erred in permitting the jury to decide whether a written transaction constituted a sale or a consignment of milk. We conclude that the district court erred and will reverse.

### I.

Central to this case is an agreement between two associations not parties to this litigation. Farmers Union Milk Producers Association (FUMPA), a Pennsylvania cooperative comprising individual dairy farmers, entered into a marketing agreement with Country Belle Cooperative Farmers, a Pennsylvania dairy processing cooperative now in bankruptcy. The agreement provides that FUMPA "does consign" its milk to Country Belle and Country Belle "agrees to sell and dispose of said milk" and to remit the proceeds to FUMPA, less authorized deductions. Country Belle retained the right to blend the proceeds of the sale of the FUMPA milk with the proceeds from the sale of the milk of other producers.

Both before and after the agreement was executed, approximately seventy percent of the milk produced by FUMPA members was sold to three large supermarket chains

---

* Hon. Charles R. Weiner of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

under "tolling" arrangements under which each chain would purchase raw milk directly from FUMPA and pay a separate charge to Country Belle for processing the milk. The remaining thirty percent of the FUMPA milk was sold within the scope of its marketing agreement with Country Belle. This milk was either delivered to the Country Belle plant for processing as fluid milk or delivered directly from the dairy farms to the plant of the appellee, Farmers Cheese Cooperative, to be made into cheese.

All of the milk in this case was produced on the dairy farms of individual producer-members of FUMPA and was delivered to Farmers Cheese in May and June of 1975 by independent haulers under contract to FUMPA. Country Belle never received, stored, processed or handled any of this milk at any time. FUMPA and Country Belle adopted a practice by which Country Belle would collect payment for the milk from Farmers Cheese and then remit this payment to FUMPA. Farmers Cheese, which had no written agreement with either FUMPA or Country Belle, acquiesced in this practice, and kept its books accordingly. For reasons which the appellant attributes to cash flow problems, representatives of Country Belle would pick up each check in person at the Farmers Cheese plant rather than wait for delivery through the mail.

During June, 1975, FUMPA delivered to Farmers Cheese 1,106,540 pounds of milk and on July 5 billed Farmers Cheese $79,099.91 for this milk. Farmers Cheese accrued the $79,099.91 as a liability owed to Country Belle. It drew its checks, payable to Country Belle in the amounts of $40,000 and $39,099.91, and on July 25, 1975 reported to the Pennsylvania Milk Marketing Board that Country Belle had been paid the $79,099.91.

On July 11, 1975, Country Belle was adjudicated a bankrupt and discontinued business operations. Shortly thereafter, representatives of FUMPA and counsel for Milk, Inc., the dairy that was then selling FUMPA's milk, approached Farmers Cheese advising that Country Belle had been adjudi-

cated a bankrupt. They further stated that the milk delivered in May and June belonged to FUMPA members and demanded payment for the balance listed on Farmers Cheese books as owing to Country Belle for the May and June deliveries. New checks were issued to the order of FUMPA and the checks drawn to the order of Country Belle were destroyed. Also at that time, Milk, Inc.'s counsel agreed that if the payments were made by Farmers Cheese to FUMPA, his company would reimburse Farmers Cheese for any losses it might incur by making such payment, including litigation and counsel fees.

The appellant, Baltimore Bank for Cooperatives, commenced this action against Farmers Cheese claiming a right to receive payment for that milk as assignee of the accounts receivable of Country Belle. Farmers Cheese defended on the ground that it had purchased the milk from FUMPA and that it had paid FUMPA in full for the milk. The jury was asked to decide whether the milk in question was sold by FUMPA to Country Belle or merely consigned to Country Belle for sale to third parties. The court instructed the jury that the payment to FUMPA was proper if the transaction between FUMPA and Country Belle was one of consignment rather than sale. The jury returned a verdict in favor of Farmers Cheese. This appeal followed the denial of Baltimore Bank's motion for judgment n. o. v.

## II.

The appellant argues that the trial judge erred in asking the jury to determine whether the transaction was a sale or consignment. We agree. It is hornbook law "that interpretation of a writing is for the court." 4 Williston, Contracts § 616 at 649 (3d ed. 1961). Where clear and unambiguous language is at issue, it is reversible error to leave such questions for the jury. *Jamison v. A. M. Byers Co.,* 330 F.2d 657, 660 (3d Cir. 1964), *cert. denied,* 379 U.S. 839, 85 S.Ct. 74, 13 L.Ed.2d 45 (1964).

Under the marketing agreement here, as we noted above, FUMPA agreed to "con-

sign for sale" to Country Belle all of its milk and Country Belle agreed "to sell and dispose of said milk and cream," but retained the right to blend the proceeds from the sale of FUMPA's milk with that of other producers. The agreement further provided that Country Belle would make monthly advances to all of its producer-members on milk delivered "in such amount per hundredweight as the board of directors in its discretion shall deem justified by marketing conditions." Country Belle was authorized to deduct from the proceeds of the sale of products amounts to cover such items as operating and maintenance costs and expenses, reasonable reserves, and "dividends on preferred stock and interest on indebtedness and revolving fund certificates."

In *Knuth v. Erie-Crawford Dairy Co-op Association*, 463 F.2d 470, 478 (3d Cir. 1972), *cert. denied*, 410 U.S. 913, 93 S.Ct. 966, 35 L.Ed.2d 278 (1973), Judge Gibbons summarized the nature of just such a marketing agreement as follows:

> The relationship between the Cooperative and the producers is not in dispute. It is defined in a written agreement. (Exhibit 109). Under that agreement the Cooperative is a consignee agent with a power of sale. It is authorized to blend the milk of all the members and to sell all that milk. It is authorized to pool the proceeds of sale, to deduct reserves for dividends and for capital purposes, and to pay all operating expenses, including transportation, selling and processing costs. It is authorized to calculate what part of the net remaining proceeds is payable to each member, taking into account the varying transportation costs in collecting his milk and its varying butterfat content. The cooperative is a separate legal entity with a board of directors, officers and stockholders. While the producers may have retained title to

the consigned milk until sale, it is quite clear that the members do not have title to the proceeds of sale. Each has only a contract right to be paid by the Cooperative a sum of money calculated in accordance with his agreement. At best each has a right to an accounting from his debtor-agent.

At the argument on the motion for a directed verdict, counsel for Farmers Cheese conceded that the marketing agreement in the instant case was identical in substance to that in *Knuth*. We fail to understand, therefore, why the trial judge did not direct verdict in Baltimore Bank's favor. As this court has held, "[w]here the evidence is such that, without weighing the credibility of the witnesses, there can be but one reasonable conclusion as to the verdict, the trial judge should determine the proceedings by a directed verdict or judgment n. o. v." *Levin v. Wear Ever Aluminum, Inc.*, 442 F.2d 1307, 1310 (3d Cir. 1971).

■ We hold that Country Belle was entitled to the payment for the May and June deliveries of milk and that Baltimore Bank is entitled to recover the appropriate amount as assignee of Country Belle's accounts receivable.[1]

### III.

■ For the foregoing reasons, the judgment of the district court will be reversed.

---

1. The appellant also challenged the trial court's exclusion of testimony concerning an alleged offer of indemnification made to Farmers Cheese by another dairy cooperative. The appellant sought the admission of the evidence apparently to show that the indemnification was the motive for Farmers Cheese's failure to pay Country Belle. Because we will reverse and hold that Baltimore Bank was entitled to a directed verdict or judgment n. o. v. as a matter of law, we need not reach this issue.