**KAWECKI BERYLCO INDUSTRIES, INC.**

v.

**FANSTEEL, INC.**

**Civ. A. No. 79–4061.**

United States District Court,
E. D. Pennsylvania.

April 21, 1981.

---

flannel sheets, are not manufactured in the United States (Tr. 72).

Joseph W. Swain, David L. Grove, Philadelphia, Pa., for plaintiff.

William W. Schwarze, Philadelphia, Pa., William Richardson, Reading, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Prior patent infringement litigation between these parties terminated six years ago when defendant Fansteel, Inc. (Fansteel) granted plaintiff Kawecki Berylco Industries (KBI) a nonexclusive license to use and sell products manufactured under and "related" to a patent owned by Fansteel. KBI, currently seeking enforcement of this agreement, requests the Court to declare that Fansteel's new patent, United States Letters Patent No. 4,009,007 (the 007 patent), is "related" to the original patent, United States Letters Patent No. 3,418,106 (the Pierret patent) and that the agreement covers the use of the 007 patent, which, KBI argues, it may properly use. Fansteel, an Illinois corporation engaged in the manufacture of electronic anodes, now moves pursuant to 28 U.S.C. § 1404(a) to transfer this matter to the Northern District of Illinois.

Section 1404(a) provides that a change of venue may be granted "for convenience of the parties and witnesses and in

the interests of justice". Six factors require examination in determining how to best serve the "interests of justice" and include plaintiff's choice of forum, ease of access to sources of proof, costs involved in obtaining attendance of willing witnesses, practical problems that make trial easy, expeditious and inexpensive, difficulties of court administration and the desirability of state law being determined by a federal court located therein. *Goodman v. Fleishmann*, 364 F.Supp. 1172, 1175 (E.D.Pa.1973). *See generally Bartolacci v. Church of the Presiding Bishop*, 476 F.Supp. 381 (E.D.Pa. 1979).

■■■■ The first factor, plaintiff's forum choice, will necessarily weigh against any proposed transfer and should receive "paramount consideration". *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). Significantly, courts decline to transfer where doing so merely shifts the burden of trial in a distant forum from defendant to plaintiff. *City of Philadelphia v. General Motors Corp.*, 324 F.Supp. 181, 182 (E.D.Pa.1971). Emphasizing that its representatives who negotiated the initial settlement contract and technical witnesses whom Fansteel will call at trial live and work in the Chicago area, Fansteel urges transfer to the Northern District of Illinois, which provides easier access to documents and witnesses who will testify as to the intent of the parties in entering into the disputed agreement. However, paragraph 5(f) of the agreement provides that it

> represents the entire understanding between the parties hereto and shall not be varied in its terms by any oral Agreement or representation otherwise than by an instrument in writing . . .

This prohibition against parol evidence effectively bars the introduction of testimony regarding the parties' intent prior to the time of contracting.[1] *See* 12A P.S. § 2–202 (Purdon) and *Pennsylvania National Bank*

& Trust Co. v. American Home Assurance Co., 87 F.R.D. 152, 155 (E.D.Pa.1980).

Likewise, the inconvenience to Fansteel's witnesses, whose proposed testimony centers upon the nature of and the relationship between tantalum agglomeration technology, the issue in the prior suit, and the phosphorus addition technology of the 007 patent, cannot form the predicate for transfer where doing so would merely shift a like burden to plaintiff's similar witnesses. Further, Fansteel has failed to support with appropriate proffers and affidavits the "general allegations" that such witnesses will be necessary to the presentation of its case. *See Reyno v. Piper Aircraft, Inc.*, 630 F.2d 149, 154 (3d Cir. 1980). *Cf. United States v. Haley*, 504 F.Supp. 1124 (E.D.1981) (to transfer a criminal case defendants needed to show that "inconvenienced" witnesses were necessary to a proper defense *and* that they could not attend trial in a distant forum).

The next three factors—the costs involved in obtaining willing witnesses, minimizing practical problems in trying the case, and possible difficulties in court administration—neither impel nor resist transfer. KBI's proposed witnesses reside in the Eastern District of Pennsylvania and the New York metropolitan area; Fansteel's proposed witnesses live in Chicago. Consequently, Fansteel has not demonstrated that trial in the Eastern District of Pennsylvania will inconvenience it any more than trial in the Northern District of Illinois will burden KBI. Finally, KBI represents that problems involved in court administration appear to be no greater in the Eastern District of Pennsylvania than in the Northern District of Illinois.

Finally, whether the substantive law of Pennsylvania or Illinois governs[2] the merits of this matter requires reference to Pennsylvania's choice of law analysis. *Klaxon Co. v. Stentor Electric Manufacturing Co.*,

---

1. *See infra* at 986–987 as to the general application of Pennsylvania law to this matter.

2. Neither party contends that the application of either Pennsylvania or Illinois law would be

"fundamentally unfair" or "arbitrary". *See Allstate Insurance Co. v. Hague*, —— U.S. ——, 101 S.Ct. 633, 638, 66 L.Ed.2d 521 (1981).

313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), *Melville v. American Home Assurance Co.*, 584 F.2d 1306, 1308 (3d Cir. 1978). In *Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854 (1970), *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964), and *Gillan v. Gillan*, 236 Pa.Super. 147, 345 A.2d 742 (1975), Pennsylvania adopted the combined attitudes of the Restatement Second (contacts establishing significant relationships) and the "interest analysis" (qualitative appraisal of relevant states' policies regarding the controversy) long advocated by Professor Currie. *See Melville v. American Home Assurance Co.*, 584 F.2d at 1311 and *Cistone v. Ford Motor Co.*, 504 F.Supp. 328 (E.D.Pa.1980).

■■ In the case at bar, the original settlement agreement granting patent rights was negotiated in Pennsylvania and executed by KBI's chairman in New York and subsequently in Illinois by Fansteel's president. Pennsylvania appears to be the "center of gravity" of the settlement contract. *Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205, 1211 (3d Cir. 1970). The agreement, negotiated in Pennsylvania, settled an action which had been pending on this Court's docket for four years. KBI is a Pennsylvania corporation with its principal place of business therein; Fansteel is a New York Corporation which does business in Pennsylvania while maintaining its principal place of business in Illinois, which appears to be a rather disinterested forum in which to resolve this dispute. The location of Fansteel's principal place of business in Illinois and its execution of the contract there are the only contacts which this litigation has with that state. Were these two fortuitous facts [3] to determine the appropri-

ate law to govern this dispute, this Court would be ignoring the flexible approach to conflict analysis mandated by *Griffith* and *Melville*. Accordingly, Pennsylvania law governs, and Fansteel's motion to transfer to the Northern District of Illinois will be denied.

KBI, now moving for summary judgment pursuant to Fed.R.Civ.P. 56,[4] asserts that the contract entered into in settlement of the prior litigation is clear, unambiguous and requires entry of judgment in its favor. That agreement provides for the cross-licensing of rights to certain patents whereby Fansteel granted KBI the "irrevocable right ... under the Pierret Patents ... to use methods ... and sell products as disclosed in said Pierret Patents" and "the right to ... make ... and sell products as disclosed in said Related Patents",[5] which the parties defined as "each and every patent" that meets three specified criteria. The parties dispute only whether the 007 patent satisfies the third "scope" condition, which provides:

(i). A patent that *claims* or discloses a method for agglomerating tantalum powder which follows, *utilizes*, or *incorporates* the methods of making such a powder as *disclosed* in the Pierret Patents;

(ii). A patent that *claims* or discloses a tantalum powder product as *disclosed* or *claimed* in the Pierret Patents, or the use thereof. (emphasis added).

The patent application states that the preferred method[6] of producing the 007 powder uses "phosphorus-containing material [combined with] the agglomeration of tantalum powder in accordance with [the Pier-

---

**3.** The quality, not quantity of contacts is, of course, determinative. *Cipolla v. Shaposka*, 439 Pa. at 566, 267 A.2d 854. *See also Reyno v. Piper Aircraft, Inc.*, 630 F.2d at 170, and *B. J. McAdams, Inc. v. Boggs*, 439 F.Supp. 738, 741 (E.D.Pa.1977).

**4.** This rule provides in relevant part that "judgment ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". *See Hollinger v. Wagner Mining Equipment Co.*, 505 F.Supp. 894 (E.D.Pa.1981).

**5.** See ¶ 1(a) and 1(b) of the settlement agreement.

**6.** 35 U.S.C. § 112 requires patent applications to "set forth the best mode by the inventor of carrying out his invention".

ret patent]". KBI argues that use of the Pierret patented process as a prerequisite for the manufacturing of the 007 products satisfies the disputed "related patents" clause of the agreement in that it "utilizes, incorporates, or discloses a method for agglomerating tantalum powder as disclosed in the Pierret patents".

Resisting summary judgment, Fansteel contends that the 007 patent does not "claim, utilize or incorporate" a method for agglomerating tantalum powder as "disclosed" by the Pierret patent and that an investigation into the negotiation of the settlement agreement would illuminate ambiguities in the document and make summary judgment inappropriate. Fansteel, in support of its first contention that the 007 patent does not claim or "disclose" a method for agglomerating tantalum which follows or incorporates the methods claimed or "disclosed" in the Pierret patents, argues that the general definition of "disclose" is to "make known that which was before unknown".[7] Since the 007 patent refers to agglomeration technology which the Pierret patent "disclosed", Fansteel asserts, the 007 patent's use thereof does not disclose or "make known any information about agglomeration that was previously unknown". Hence, the 007 patent does not "claim" or "disclose" a method for making powder "claimed" by the Pierret patent.

Written contracts are construed to "give effect to all of its parts and any construction which would render the agreement meaningless should be avoided". *New Wrinkle v. John L. Armitage & Co.*, 238 F.2d 753, 757 (3d Cir. 1956). Contracts should not be

> twisted to create vagaries or strained to produce ambiguity where none would otherwise exist ... A construction which seems rational, probable and resulting in consequences which a prudent person would make will be preferred.

*Tookmanian v. Safe Harbor Water Power Corp.*, 505 F.Supp. 920 (E.D.Pa.1981) (citations omitted). To accept Fansteel's proffered meaning of "disclose" would mean

that no patented process or product which relates to agglomeration issued after the Pierret patent could "disclose" anything about agglomeration. Otherwise, the alternative "disclosure" provisions of the "related patents" clause would be meaningless. The disputed provision of the agreement allows for permutations and combinations of events. For example, the contract deems as "related" subsequent patents which *"disclose* a method for agglomerating tantalum powder which *follows* ... the methods of making such a powder as *disclosed* in the Pierret patent". The contract also deems as "related" subsequent patents which *"disclose* a method for agglomerating tantalum powder which ... *utilizes* the methods of making such a powder as *disclosed* in the Pierret patents". Accepting Fansteel's proposition would further reduce the parties' negotiated contract language to an absurdity since one of the alternative provisions of the disputed section deems as related a patent that *discloses* a tantalum powder product as *disclosed* in the Pierret patents. *See, for example, Merando, Inc. v. United States*, 475 F.2d 603, 605 (Ct.Cl. 1973). How could any process which claims a tantalum powder product as *disclosed* in the Pierret patents "make known something previously unknown" about them? The disclosure provision merely deems as "related" patents owned by the parties which "state" or "disclose" that thgn use the Pierret patent. Clearly, the experienced counsel who negotiated the agreement would not have included this language without intending to give it some purpose. A patent application may claim and disclose matter not invented by the applicant. *In re Clemens*, 622 F.2d 1029, 1037 (C.C.P.A.1980). If parties have contracted to consider these disclosures as evidencing a "related" patent, the Court will not interfere with or rewrite their bargain.

Seeking to introduce indicia external to the contract in order to interpret the instrument, Fansteel points to asserted ambiguities in the instrument and argues that the intent of the negotiators must be divined

---

**7.** Ballatine's Law Dictionary 417 (3d ed. 1969).

before the contract may be understood. Under Pennsylvania law, unambiguous writings are interpreted by the courts. *Community College v. Society of the Faculty*, 473 Pa. 576, 592, 375 A.2d 1267 (1977), *See also Special Jet Services, Inc. v. Federal Insurance Company*, 643 F.2d 977, 980 (3d Cir. 1981) *Brokers Title Co. v. St. Paul Fire & Marine Insurance Co.*, 610 F.2d 1174, 1178 (3d Cir. 1980). It is error to leave such questions for the jury. *Baltimore Bank for Cooperatives v. Farmers Cheese Cooperative*, 612 F.2d 151, 153 (3d Cir. 1979). All contracts are subject to interpretation by courts, including the meaning of the words contained in a patent claim, *Methode Electronics, Inc. v. Elco Corp.*, 385 F.2d 138, 140 (3d Cir. 1967), and counsel's conflicting reading of the settlement agreement does not by itself create a genuine issue of material fact. *Goldinger v. Boron Oil Co.*, 375 F.Supp. 400 (W.D.Pa.1974), *aff'd*, 511 F.2d 1393 (3d Cir. 1975). The contract does not contain any ambiguities and parole evidence will not be admitted to aid in its interpretation. *See Brezan v. Prudential Insurance Co.*, 507 F.Supp. 962 (E.D.Pa.1981).

■ The contract, clearly read and easily understood, grants KBI the right to use those patents owned by Fansteel and "related" to the Pierret process. Under the terms thereof, the contested 007 patent is "related" to the Pierret patent since it "follows, utilizes or incorporates" the methods of making tantalum powder as disclosed by the Pierret patent. Having so found, KBI's motion for summary judgment will be granted.

### ORDER

AND NOW, this 21st day of April, 1981, IT IS ORDERED that defendant's motion to transfer is DENIED and that plaintiff's motion for summary judgment is GRANTED. IT IS FURTHER ORDERED that the United States Letters Patent No. 4,009,007 is a "related patent" as defined in Paragraph 1(d) of the agreement between plaintiff and defendant dated January 24, 1975; that pursuant to the terms of said agreement, plaintiff and its affiliates have a non-exclusive, irrevocable, paid up, royalty-free license without the right to grant sublicenses, under United States Letters Patent No. 4,009,007 to use methods and to make, use and sell products as disclosed in said patent; that defendant, its officers, agents, representatives, successors, assigns and all those acting under its authority or in privity with it, or any of them, are enjoined from asserting, alleging, or representing that plaintiff and its affiliates do not have a non-exclusive license under United States Letters Patent No. 4,009,007; and that defendant shall specifically perform said agreement and revise its list of "related patents" pursuant to Paragraph 1(f) of said agreement to include United States Letters Patent No. 4,009,007.