**W. Mae BRUTON, Plaintiff,**

v.

**The DIAMOND STATE TELEPHONE COMPANY, a corporation of the State of Delaware, Defendant.**

**Civ. A. No. 85–15–JLL.**

United States District Court,
D. Delaware.

Dec. 4, 1985.

**940**

Christopher B. Wolfe of Priestley & Joseph, Wilmington, Del., for plaintiff.

Douglas B. Catts of Schmittinger & Rodriguez, Dover, Del., and Robert J. Costagliola of The Diamond State Telephone Co., Philadelphia, Pa., for defendant.

## OPINION

LATCHUM, Senior District Judge.

This is a civil rights action brought by plaintiff, W. Mae Bruton ("Bruton"), against defendant, The Diamond State Telephone Company ("Diamond State"), under Title VII of the Civil Rights Act · of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* The Act prohibits an employer from discriminating in the hiring, payment, or treatment of employees on the basis of their religion.[1] Bruton alleges that Diamond State has breached the Settlement Agreement ("Agreement") which settled a

previous charge of discrimination filed by her against Diamond State. The Agreement was executed in early 1980 by Bruton, Diamond State, and the Equal Employment Opportunity Commission ("EEOC"). This Court has jurisdiction pursuant to 28 U.S.C. § 1343(a) and 42 U.S.C. § 2000e-5(f)(3).

The parties have completed discovery[2] and Diamond State has moved for summary judgment[3] pursuant to Fed.R.Civ.P. 56. After considering the parties' submissions on this motion and oral argument, this Court has determined that there is no genuine issue as to any material fact and that Diamond State is entitled to judgment as a matter of law. Accordingly, Diamond State's motion for summary judgment will be granted.

## I. FACTS

The material facts in this case are undisputed. Bruton was hired by Diamond State as an operator on May 19, 1969, and has held that position in Diamond State's Wilmington, Delaware office since the date of her hire.[4] In March, 1977, Bruton became a member of the Seventh Day Adventist Church, which requires its members to refrain from working during the church's Sabbath.[5] Church members observe their Sabbath from sundown on Friday to sundown on Saturday.[6] Bruton subsequently advised her manager that she could no longer work between sundown on Friday and sundown on Saturday.[7] When Bruton continued to be scheduled for work on her Sabbath, she filed a religious discrimination charge with the EEOC, resulting in the

---

1. 42 U.S.C. § 2000e–2(a) provides in pertinent part: "It shall be unlawful employment practice for an employer—(1) ... to discriminate against any individual with respect to ... compensation, terms, conditions, or privileges of employment, because of such individual's ... religion.

   In 1972, Title VII was amended to add a definition of religion which expounds on employers' duties with respect to employees' religious beliefs. 42 U.S.C. § 2000e(j) (1982) states that "[t]he term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to [sic] an employee's or prospective employee's religious

observance or practice without undue hardship on the conduct of the employer's business.

2. Docket Item ("D.I.") 24 at 1 and D.I. 25 at 1.

3. D.I. 23.

4. D.I. 15 at 9.

5. D.I. 1 at ¶ 7.

6. *Id.* at ¶ 8.

7. D.I.'s 1 and 5 at ¶ 11.

Agreement upon which this action is predicated.

Since the Agreement constitutes the focal point of this litigation, it is set forth below in its entirety, along with the contemporaneous release executed by the parties to this action.

### SETTLEMENT AGREEMENT

1. In exchange for the promises made by The Diamond State Telephone Company contained in paragraph (2) of this Agreement, W. Mae Bruton agrees not to institute a lawsuit under Title VII of the Civil Rights Act of 1964 based on Charge Number 031790408 filed with the Equal Employment Opportunity Commission, and the Equal Employment Opportunity Commission agrees not to process the charge further.

2. In exchange for the promise of W. Mae Bruton and the Equal Employment Opportunity Commission contained in paragraph (1) of this agreement, The Diamond State Telephone Company agrees:

   a. To permit voluntary tour trades and if Charging Party is unsuccessful in attaining trades on her own, Respondent will lend all reasonable assistance in making a trade of hours or of days off.

   b. Charging Party will be permitted to post notice on the bulletin board to obtain trades.

   c. During Daylight Saving Time when Charging Party's normal rotation would require Saturday work, Respondent agrees to schedule during that week four (4) full and two (2) part tours. One of the part tours will be scheduled on Saturday after sundown.

3. This agreement constitutes the complete understanding between the Respondent, Charging Party and the Equal Employment Opportunity Commission. No other promises or agreements shall be binding unless signed by these parties.

4. It is understood that this agreement does not constitute an admission by the Respondent of any violation of Title VII of the Civil Rights Act of 1964, as amended or any other applicable Federal, State or Local law or regulation propounded thereunder.

5. These parties agree that this agreement may be used as evidence in a subsequent proceeding in which any of the parties allege a breach of this agreement.

### RELEASE

In exchange for the promise(s) made by the Diamond State Telephone Company, contained in paragraph 2 of Exhibit A, attached hereto and made a part hereof,

W. Mae Bruton agrees not to institute any action, arising out of those facts related to the instant matter, in law or equity or file any further charge or charges under or pursuant to any federal, state or local law or regulation propounded thereunder which is or might be the subject of the relief referred to in Exhibit A.

It is specifically understood that the actions taken herein by the Diamond State Telephone Company do not constitute an admission of any violation of any applicable federal, state or local law or regulation propounded under.[8]

The requirement that Diamond State's employees work on Saturdays, and the procedures for scheduling all operators, are undisputed.[9] Operators are required to work weekends as well as weekdays. The usual week's schedule consists of five days of work and two days off. Weekend work is rotated among Diamond State's employees, generally resulting in the employees working two weekends a month.[10] All

---

**8.** D.I. 5, Ex. A.

**9.** D.I. 21 at 4.

**10.** D.I. 17 at 14–15.

work shifts ("tours") are scheduled on a seniority, tour preference basis.[11]

Under Diamond State's scheduling procedures, employees specify their preferences for scheduled tours they wish to work on any day of the week, including weekends. This is done by employees listing their preferred tours for each day of the week; tours are then assigned on a seniority basis according to the employee's stated preferences.[12] Hence, employees with greater seniority have a greater probability that their choices will be reflected in their actual work schedules.[13] Diamond State has consistently scheduled its employees on a seniority preference basis since at least 1941.[14]

In her complaint, Bruton alleges that, for approximately two years following execution of the Agreement with Diamond State, she was scheduled for full tours after sundown on Saturdays during Eastern Standard Time ("EST").[15] Bruton, however, concedes that Diamond State's scheduling during Daylight Savings Time ("DST"), which is governed by ¶ 2(c) of the Agreement, is not at issue in this case because she has been scheduled during DST in accordance with this provision of the Agreement.[16] The gravamen of Bruton's complaint is that after the Agreement was entered into, she was consistently sched-uled for a full tour after sundown on Saturdays during EST, thus obviating the need for her to work on her day off. Bruton does, nonetheless, have to work on her day off during DST because the sun does not set during DST until after the full Saturday evening tour has begun. Thus, Bruton has to work two part tours and four full tours (*e.g.* work on six days as opposed to five) during the weeks she is scheduled for weekend work during DST.

Although Bruton was scheduled for full tours after sundown on Saturdays during EST for two years after she entered into the Agreement with Diamond State, she began to be scheduled for part tours on Saturdays during EST in 1982 when her manager was replaced.[17] Sometime in 1982, Bruton's new manager received a complaint from another employee in Bruton's office. The employee complained about Bruton receiving a full evening tour on Saturdays when the other employee, because of her greater seniority, was entitled to receive the tour before it was assigned to Bruton.[18]

After investigating Bruton's coworker's complaint, Bruton's manager advised Bruton that she would only be assigned a full Saturday evening tour during EST after the preferences of more senior operators for that tour had been honored. None-

---

**11.** The collective bargaining agreement between Diamond State and the United Telephone Workers of Delaware, Bruton's union, defines a normal work week for full time operators as "consist[ing] of five full tours or four full and two half-tours which may be scheduled on any of the seven days of the calendar week." D.I. 23, Ex. A, attachment 1 at 177.

Employees with twenty-five or more years of service with Diamond State can elect not to work weekends provided that no other employee is required to work more than twenty-six weekends in a calendar year. D.I. 21 at 4. Since Bruton has approximately sixteen years of service, she is not eligible for the twenty-five year seniority preference.

The collective bargaining agreement also provides for full day and evening tours, as well as part-day and evening tours, and contains rather labyrinthine provisions regarding tour duration and scheduling. D.I. 23, Ex. A, attachment 1 at 175–177.

**12.** D.I. 22 at 3.

**13.** D.I. 15 at 16–17.

**14.** D.I. 18 at 18, 32.

**15.** D.I. 1 at ¶ 14. During EST, a period roughly corresponding to the winter months, Bruton is able to work a full tour on Saturday evenings because the full tour begins after sundown. This occurs because the sun sets earlier during EST than it does during Daylight Savings Time.

**16.** D.I. 1 at ¶ 14.

**17.** D.I. 1 at ¶¶ 15–16.

**18.** D.I. 17 at 16–18. Apparently, the Saturday full evening tour is a popular tour among Diamond State's operators. D.I. 18 at 23. Further, this incident in 1982 appears to be the first occasion when one of Bruton's coworkers complained about Bruton's preferential tour scheduling. D.I. 18 at 10–11; D.I. 17 at 18.

theless, if Bruton's manager could not honor the preferences of operators senior to her for the full evening Saturday tour, Bruton was informed that she would be scheduled for part tours, one of which would start after sundown on Saturdays during EST.[19] Bruton concedes that she was scheduled under the established office scheduling procedure. Thus, Bruton was assigned a full evening tour on Saturdays beginning after sunset during EST according to her seniority vis-a-vis other operators.[20]

Bruton has satisfied all administrative prerequisites to the filing of this action. She filed the charge of religious discrimination with the EEOC on April 16, 1984, complaining about being scheduled for part tours on Saturdays during EST.[21] After investigating Bruton's charge, the EEOC, on October 9, 1984, determined that reasonable cause did not exist to support her allegations.[22] Bruton subsequently exercised her right to sue by filing a timely complaint on January 8, 1985.

## II. SUMMARY JUDGMENT

The legal principles applicable to summary judgment motions are well settled. To prevail on a motion for summary judgment under Fed.R.Civ.P. 56(c), the moving party must demonstrate that there is no issue regarding any material fact in the case and that the moving party is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *EEOC v. Westinghouse Electric Corp.*, 725 F.2d 211, 218 (3d Cir.1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984). In deciding whether to grant summary judgment, the Court must draw all inferences from the evidentiary sources in the record in a light most favorable to the non-moving party. *Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608;

*United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); 6 Moore's Federal Practice ¶ 56.15[3] (2d ed. 1985).

Although Diamond State bears the initial burden on its summary judgment motion, Bruton bears the burden of producing material evidence in support of her allegations and "may not rest upon the mere allegations or denials" of her pleading, but must establish specific facts showing the existence of a "genuine issue for trial." Fed.R. Civ.P. 56(e). "[A] genuine issue means that the evidence must create a fair doubt, and wholly speculative assertions will not suffice." *Jersey Central Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109 (3d Cir.1985). Moreover, "[d]enials in the form of legal conclusions, unsupported by documentation of specific facts, are insufficient to create issues of material fact that would preclude summary judgment." *Id.; SEC v. Bonastia*, 614 F.2d 908, 914 (3d Cir.1980).

The material facts[23] set forth in the pleadings, depositions, answers to interrogatories, and admissions in the record are undisputed.

## III. INTERPRETATION OF THE AGREEMENT

Since there are no disputed material facts, the Court turns to questions of law. In *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Supreme Court established requirements for the validity of settlement agreements in Title VII lawsuits. In determining the validity of a settlement agreement, a court must find that an employee knowingly and voluntarily consented to the settlement agreement when the employee

---

**19.** D.I. 17 at 17–20.

**20.** D.I. 21 at 4.

**21.** D.I. 12, Ex. C.

**22.** D.I. 12, Ex. D.

**23.** Trivial factual disputes cannot defeat a motion for summary judgment. "A summary judgment order is not defeated ... merely because an issue of fact exists; the factual issue in dispute must be material to the resolution of the dispute." *Westinghouse Electric*, 725 F.2d at 218.

waives his or her right to pursue a Title VII action. *Id.* at 52 n. 15, 94 S.Ct. at 1021 n. 15. *See also Lyles v. Commercial Lovelace Motor Freight Inc.*, 684 F.2d 501 (7th Cir. 1982); *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981).[24] In *Lyles*, the court held that an employee entered into a settlement agreement knowingly and voluntarily when there is no evidence of coercion or overreaching on the part of the employer. *Id.* at 504. Similarly, there is absolutely no evidence of coercion or overreaching by Diamond State in this case, nor does Bruton raise any such allegation.

In *Tucker v. Harley Davidson Motor Co.*, 454 F.Supp. 738 (E.D.Wis.1978), the court denied an employer's motion for summary judgment in an employment discrimination action because the employee asserted that he "had no knowledge of what he was signing" when he signed the settlement agreement. The court concluded that the employee's alleged lack of knowledge, as well as the employee's assertion that the employer did not fulfill the terms of the agreement, created a dispute as to the material facts in the case. *Id.* at 742.

This case presents a factual situation markedly different from *Tucker*. Bruton does not aver that she had no knowledge of the terms of the Agreement she signed in 1980. Additionally, Bruton does not assert that Diamond State has failed to fulfill the written terms of the Agreement. Rather, Bruton essentially argues that Diamond State's actions in accommodating her by scheduling her for full Saturday evening tours during EST for two years after execution of the Agreement obligates Diamond State to continue this scheduling accommodation indefinitely. Bruton ad-

vances this argument despite the absence of supporting language in the Agreement.

Bruton attempts to transform a scheduling procedure favorable to her, which was implemented by Diamond State as an accommodation to her outside of the 1980 Agreement, into a permanent obligation that contravenes Diamond State's well established seniority preference scheduling. This attempted transformation is contrary to the unambiguous, express terms of the Agreement and is therefore unsupported by contract law principles. Such an argument, when premised on undisputed facts which are contrary to the written Agreement, cannot defeat Diamond State's motion for summary judgment. "It is hornbook law that interpretation of a writing is for the court." *Baltimore Bank for Coops. v. Farmers Cheese Coop.*, 612 F.2d 151, 153 (3d Cir.1979). Moreover, "[w]here clear and unambiguous language is at issue, it is reversible error to leave such questions for the jury." *Id.*

In her brief,[25] Bruton concedes that material facts in this case are undisputed. Nonetheless, Bruton asserts that the Agreement's silence with respect to Diamond State's obligations regarding scheduling during EST constitutes a material factual dispute which should bar summary judgment in favor of Diamond State.

However, the record directly contradicts Bruton's argument. Although her allegations are contractually based, Bruton admits that the Agreement does not obligate Diamond State to schedule her for a full Saturday tour beginning after sunset during EST.[26] Bruton also admits that Diamond State's only obligation to her regarding scheduling during EST is governed by paragraph 2(a) of the Agreement.[27] Para-

---

**24.** Federal law governs the interpretation of settlement agreements under Title VII because the rights of the litigants and the operative legal policies derive from a federal source. *Lyles*, 684 F.2d at 504; *Fulgence*, 662 F.2d at 1209.

**25.** D.I. 25 at 3–4.

**26.** D.I. 21 at 2. Plaintiff's Response to Defendant's Request for Admission No. 7 states:

7. It is admitted that in the Settlement Agreement referred to in paragraph one (1) above, Defendant did not agree to schedule Plaintiff for a full tour beginning after sunset on Saturdays during Eastern Standard Time.

**27.** D.I. 21 at 3. Plaintiff's Response to Defendant's Request For Admission No. 8 states:

8. It is admitted that in the Settlement Agreement referred to in paragraph one (1) above, with regard to scheduling Plaintiff for tours

graph 2(a) only obligates Diamond State to permit voluntary tour trades and to lend all reasonable assistance to Bruton if she is unsuccessful in obtaining tour trades. The Agreement does not impose any affirmative scheduling obligations on Diamond State during EST.

Not only does Bruton admit that material facts are undisputed, but she also admits that Diamond State only has limited scheduling obligations during EST. Additionally, paragraph 2(c) recites that the Agreement encompasses the "complete understanding" between the parties.[28] "When parties to an agreement reduce their understanding to a writing that uses clear and unambiguous terms, the court should look no further than the writing itself when asked to give effect to that understanding." *Brokers Title Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 610 F.2d 1174, 1178 (3d Cir.1979); *Thermice Corp. v. Vistron Corp.*, 528 F.Supp. 1275 (E.D. Pa.1981), *aff'd*, 688 F.2d 825 (3d Cir.1982). Diamond State's understanding of the Agreement becomes axiomatic when Bruton fails to advance any "specific facts" showing the existence of a "genuine issue" for trial.[29]

This is not a complex Agreement; its terms cover less than one printed page and are easily understood by a lay person. Moreover, this is not an adhesion Agreement; there is no indication or argument by Bruton that bargaining did not take place at arm's length. "Fundamental principles of contract law are squarely at issue here; choosing, interpreting and applying the appropriate principle cannot be avoided by resort to fact finding." *Brokers Title*, 610 F.2d at 1177.

This Court cannot shirk its duty and permit this case to go to trial. The only issues presented to the Court for resolution are legal ones. The Agreement between Bruton and Diamond State simply cannot be read to obligate Diamond State to schedule Bruton for full Saturday evening tours during EST. Moreover, Diamond State's practice of scheduling Bruton for full Saturday evening tours during EST after the Agreement was entered into cannot vary the terms of the Agreement. Diamond State should not be penalized for making extensive efforts to accommodate Bruton by insuring her two full days off while still accommodating her religious beliefs and practices. It was only after a more senior employee complained that Diamond State reverted to its well-established seniority preference tour assignment procedure.

Diamond State's actions went beyond what it was obligated to do pursuant to the terms of the Agreement; therefore, Bruton cannot attempt to vary this Agreement at a later date because Diamond State previously scheduled Bruton in a way more favorable to her. Had Diamond State attempted to schedule Bruton on her Sabbath during EST, a different case would be presented to the Court. But when an employer goes beyond the terms of a settlement agreement to accommodate an employee, the employee cannot successfully seek to penalize the employer for undertaking action that was beneficial to the employee. The Agreement is unambiguous and Bruton's allegations cannot thwart the written obligations set forth in the Agreement.

On the substantial record before the Court, there is no basis for substituting Bruton's unfounded "interpretation" of the Agreement for the plain import of the written terms constituting the Agreement between Bruton and Diamond State.

Accordingly, summary judgment will be entered in favor of Diamond State.

during Eastern Standard Time, Defendant agreed *only* to permit voluntary tour trades, to aid Plaintiff in obtaining such trades if she is unsuccessful in doing so, and to permit Plaintiff to post notice on the bulletin board to obtain trades. (Emphasis added.)

**28.** Paragraph 2(c) also requires any other promises or agreements to be in writing to bind the parties.

**29.** *See* Fed.R.Civ.P. 56(e).